UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| **CHERTOFF CAPITAL, LLC,** | |
| Plaintiff, | Civil Case No. |
| v. | 1:20-cv-138 (TSE/TCB) |
| **JASON SYVERSEN**, *et al.*, | |
| Defendants. | |

## DEFENDANT BRAES CAPITAL, LLC'S BRIEF IN SUPPORT OF ITS MOTION FOR COSTS AND TO STAY PROCEEDINGS

### INTRODUCTION

Plaintiff previously filed an essentially identical tortious interference with contract claim against Defendant Braes Capital, LLC ("Braes") in another case in this Court. After receiving an adverse ruling from a Magistrate Judge that the claim was without merit and recommending dismissal, Plaintiff voluntarily dismissed the prior action, only to file a new one including effectively the same frivolous tortious interference claim against Braes. Plaintiff's conduct in refiling a discredited claim is vexatious, and this Court should award Braes its attorney's fees and costs incurred and paid in the prior action, and further stay the present action until those fees and costs are paid.

### FACTS

In May 2019, Plaintiff filed a complaint against Defendants Jason Syversen ("Syversen") and Braes under the caption *Chertoff Capital L.L.C. v. Braes Capital, LLC et al.,* No. 19-cv-631, alleging, *inter alia*, that Braes tortiously interfered with a contract ("the Contract," attached

1

hereto as Exhibit 1) between Plaintiff and Syversen pursuant to which Plaintiff agreed to advise Syversen regarding a potential management buyout ("MBO") of Siege Technologies, LLC ("Siege"), a company Syversen co-founded, from its then-owner, Nehemiah Security, LLC ("Nehemiah").

Notably, on the day Plaintiff filed the action, its then-attorney emailed Braes, which was then involved in its own acquisition of Siege, boasting that the filing would adversely impact Braes's equity campaign with respect to Siege:

> You will be familiar with the relevant laws governing private placements of this nature, but we assume that the pendency of this lawsuit is a material fact that would need to be disclosed to prospective investors with sufficient specificity and that a failure to do so would essentially give every investor a right of rescission for a year after closing. We will leave it to you to advise your client as you deem fit but wanted to raise that point for your consideration.

Exhibit 2, 5/23/19 Email from Attorney Lhommedieu.

In July 2019, Plaintiff amended its complaint, alleging that Braes tortiously interfered with the Contract by (1) preventing an MBO from taking place by inducing Syversen to abandon his planned MBO acquisition of Siege, and (2) "propos[ing]" a separate acquisition of Siege by Braes from Nehemiah. *See* Exhibit 3, Amended Complaint, ¶¶ 33, 37, 41. Plaintiff also included a claim for statutory business conspiracy against Braes and Syversen pursuant to Va. Code §§ 18.2-499 and 500, which contain a fee shifting provision. *See id.*, ¶¶ 57-61. Plaintiff's prayer for relief sought the recovery of its attorney's fees. *Id.*, *ad damnum.*

In response to the amended complaint, Braes and Syversen each filed motions to dismiss, upon which Magistrate Judge Nachmanoff heard oral argument on October 11, 2019. Exhibit 4, 10/11/19 Hearing Tr. At the hearing, both Syversen's and Braes's attorneys represented that no MBO took place because Braes, not Syversen, acquired Siege, and Syversen's investment

interest in the transaction was minuscule. *Id.*, at 5:2-9, 33:5-11.  Plaintiff's then-attorney did not argue that an MBO of Siege had occurred and instead argued that Braes interfered and prevented the MBO transaction that Chertoff was working towards by acquiring Siege itself. *See id.,* at 25.[1] On October 31, Judge Nachmanoff recommended that both motions to dismiss be granted.

In reviewing the factual allegations and the Contract language, Judge Nachmanoff noted (1) that Syversen approached Plaintiff "about helping Syversen execute a management buyout (MBO) of Siege;" (2) Chertoff opted for a contingent fee payable upon the successful acquisition of Siege by Syversen, rather than an upfront fee; (3) that the contract was terminable if Syversen "decides not to move forward with" Syversen's acquisition of Siege; (4) that on April 29, 2019, Syversen notified Plaintiff that he had decided not to move forward with the MBO; and (5) that Plaintiff did not allege that the acquisition of Siege by Braes was an MBO. Exhibit 5, 10/31/19 Report and Recommendation, at 2-4, 8. *See also* Exhibit 1 §§ 3 (compensation); 5 (term).

Judge Nachmanoff found, *inter alia*, that the amended complaint failed to allege an underlying breach of the contract and that the tortious interference claim must fail. Exhibit 5, at 4. Specifically, Judge Nachmanoff observed:

> Syversen's contract with Chertoff contemplated an MBO, whereby Syversen would come to own the [sic] Siege. But it is undisputed that Syversen has not bought the company. Instead, Braes funded a separate transaction and became the owner. A non-MBO transaction has no bearing on the original contract between Syversen and Chertoff. Although Section 5 of the agreement, which governs the circumstances under which the agreement can be terminated, does not use the term MBO, stating only that the agreement is terminated if 'Client decides not to move forward with the acquisition of Target,'

---

[1] Plaintiff's counsel also argued that the partially executed version of the Contract appended to Braes's motion was not the same as the actual Contract in force between Syversen and Plaintiff. Exhibit 4, at 25:13-26:4. This also formed one of the bases for Plaintiff's abandoned objections to Judge Nachmanoff's Report and Recommendation. As is readily apparent from comparison of the Contract submitted in the prior action and the fully executed version attached hereto as Exhibit 1, there is no substantive difference between the two.  Therefore, the basis of Plaintiff's attorney's argument and abandoned objection is unclear.

> Plaintiff has failed to allege that the Client (Syversen) in fact moved forward with an acquisition of the Target (Siege). The contract clearly contemplates an MBO transaction. To read 'acquisition' differently solely in the context of Section 5 stretches the bounds of plausibility. But even if the Court were to interpret Section 5 to refer to non-MBO transactions, the fact remains that Syversen was the Client, and Syversen did not acquire the company, in any sort of transaction, MBO or otherwise, nor was such an acquisition imminent at the time the suit was initiated. The trigger for Syversen's obligation to pay Chertoff never occurred. Without any invasion of Chertoff's legal interests under the contract, there is no injury-in-fact alleged.

*Id.*, at 5-6.[2]

As Judge Nachmanoff recognized, while Plaintiff argued that Syversen anticipatorily breached the Contract by repudiating the "obligation" to pay Plaintiff a fee under the Contract, "the Braes acquisition of Siege has no bearing on the contract between Chertoff and Syversen." *Id.*, at 6. Judge Nachmanoff continued:

> [U]nder the facts alleged by the plaintiff in the Amended Complaint, Syversen did not repudiate the contract. Rather, he exercised his right to terminate under the express language of the agreement. Section 5 of the agreement between Chertoff and Syversen states that the contract remains in effect until "the Client decides not to move forward with the acquisition of the Target." Syversen exercised this option in April 2019. Plaintiff's Amended Complaint acknowledged that Syversen informed Chertoff their deal would not go forward on April 29, 2019. Syversen made this position clear again in a letter on May 20, 2019, which was also attached to the Amended Complaint. In light of these circumstances, to find that a repudiation of the contract took place would not only be implausible, it would also ignore Syversen's termination of the contract under the clear language of Section 5 of the agreement.

---

[2] In the alternative, Judge Nachmanoff would have recommended dismissal of the tortious interference with contract claim under Rule 12(b)(6) because Plaintiff failed to plead two necessary elements: (1) intentional interference that induces a breach of the contract; and (2) damage to the Plaintiff as a result of said interference. *Id.*, at 6, n.3 (citing *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985)).

*Id.*, at 8. Finding an absence of an "underlying unlawful means or unlawful act," Judge Nachmanoff also recommended dismissal of the statutory business conspiracy claims against Braes and Syversen. *Id.*, at 6 n.3, 7-8.

Before this Court could adopt Judge Nachmanoff's recommendation, Plaintiff filed a voluntary dismissal under Rule 41(a).[3]

In February of this year, Plaintiff filed this case, in which Plaintiff refiled the same tortious interference with contract claim against Braes that Judge Nachmanoff had categorically rejected. As in the prior complaint, Plaintiff now alleges that Braes misused confidential or proprietary information prepared by Plaintiff during its performance of the Contract. *Compare* Compl., ¶ 25 *and* Exhibit 3, ¶ 31. Plaintiff again alleges that Braes reached an agreement to acquire Siege. *Compare* Compl., ¶¶ 28-30 *and* Exhibit 3, ¶¶ 33-35. While the prior complaint did not allege that Braes's acquisition of Siege was an MBO and instead alleged that Braes's acquisition interfered with and prevented an MBO, Plaintiff now bizarrely concludes, without any supporting factual allegations, that Braes's acquisition of Siege *was* an MBO. Compl., ¶ 33. This unsupported conclusion is inconsistent with Plaintiff's prior representations and theories and was debunked by Judge Nachmanoff's Report and Recommendation, in which he noted that "it is undisputed that Syversen has not bought the company" and that "Braes funded a separate transaction and became the owner," Exhibit 5, at 5. Plaintiff has filed the same tortious interference claim that Judge Nachmanoff found to be without merit, making only one unsupported conclusion in a futile attempt to evade Judge Nachmanoff's inescapable ruling that the Siege transaction was not an MBO. In fact, elsewhere in the current Complaint, Plaintiff

---

[3] Plaintiff also filed an objection to Judge Nachmanoff's Report, but abandoned the objection when it dismissed the case before this Court could rule on it.

admits that it was Braes, not Syversen, that acquired Siege, thus contradicting the allegation that the transaction was an MBO. *See* Compl., ¶ 30 ("Plaintiff reasonably believes and therefore alleges that on or around July 10, 2019, Braes Capital, via a subsidiary, acquired Siege . . .").

## ARGUMENT

Here, Plaintiff is attempting to relitigate a claim for which it has already received an adverse ruling in a previously filed case. Plaintiff exploited the gap in time between the issuance of Judge Nachmanoff's Report and the Court's adoption thereof to voluntarily dismiss the prior case and then refile it again three months later for another futile roll of the dice. This is exactly the sort of conduct that Rule 41(d) of the Federal Rules of Civil Procedure was designed to deter. Under Rule 41(d), "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." Fed. R. Civ. P. 41(d).

Rule 41(d) exists as "a deterrent to forum shopping and vexatious litigation . . . [including] attempts to gain any tactical advantage by dismissing and refiling the suit." *Andrews v. America's Living Centers, LLC*, 826 F.3d 306, 309 (4th Cir. 2016). The Fourth Circuit has held that attorney's fees are compensable under Rule 41(d) where an "underlying statute provides for" them, and at the court's discretion in certain circumstances, as when a court finds that a plaintiff has acted vexatiously. *Id.*, at 311. In the Fourth Circuit, vexatious means "without reasonable cause or excuse." *Id.* (quotations omitted). Attorney's fees are warranted and a plaintiff refiling the same or substantially similar action has acted vexatiously "when the party has been notified by a prior court that the claim is insufficient or has no merit and files a subsequent action anyway." *McGlothlin v. Hennelly*, 2018 WL 3548693, at *2 (D.S.C. July 24,

2018) (citing *Zuraf v. Clearview Eye Car, Inc.*, 261 F. Supp. 3d 637, 645 (E.D. Va. 2017)). *See also Davis v. Target Stores Div. of Dayton Hudson Corp.*, 87 F. Supp.2d 492, 494 (D. Md. 2000) ("[T]he continuation of litigation of claims which have become frivolous has been held to amount to 'bad faith' justifying a fee award.") (citation omitted).

It is no less vexatious if the Plaintiff's professed motivation for dismissing one action and filing another based on or including the same claim against the same defendant is to "remedy defects" in the prior complaint. *Robinson v. Bank of Am., N.A.*, 553 F. App'x 648, 651-52 (8th Cir. 2014). In *Robinson*, the Eighth Circuit upheld a district court fee award in such a circumstance, where the district court noted that the Plaintiffs could have moved to amend their complaint in the prior case but did not do so. *Id.*, at 652.

Here, statutory provisions underlying the prior case, Virginia's business conspiracy statutes at Va. Code §§ 18.2-499 and 500, allow for the recovery of costs, including attorney fees. The Fourth Circuit has held that recover of attorney fees under Rule 41(d) is allowed when the underlying statute "defines costs to include attorneys' fees." *Andrews*, 827 F.3d at 310-11 (quotation omitted). In the prior action, Judge Nachmanoff recommended the dismissal of Plaintiff's business conspiracy claim, pursuant to which Plaintiff had sought an award of attorney's fees. Exhibit 5, at 6 n.3, 7-8; Exhibit 3, *ad damnum*. Because the prior action contained an underlying statutory claim providing for attorney's fees as recoverable costs, Braes may recover its fees from the prior case in a Rule 41(d) motion in this case. *Andrews*, 827 F.3d at 311.

Braes may also recover its attorney's fees because Plaintiff's conduct is vexatious. Judge Nachmanoff's Report put Plaintiff on notice of the infirmity of the tortious interference with contract claim. Although Plaintiff filed a motion for leave to file another amended complaint on

November 14, 2019 (the same day it filed an objection to the Report), it abruptly dismissed the prior action on November 22 before the motion could be heard. Less than three months later, Plaintiff filed the instant suit, and effectively refiled a tortious interference claim that Judge Nachmanoff had already recommended be dismissed, adding only an unsupported, contradictory conclusion that the transaction at issue was an MBO (despite Judge Nachmanoff's observation that it was beyond dispute that the actual transaction *was not an MBO* and despite contrary allegations regarding the nature of the transaction in the current Complaint).

This is exactly the sort of gamesmanship that Rule 41(d) was designed to prevent. This ploy is nothing more than a futile and transparent attempt to avoid Judge Nachmanoff's ruling and further harass and interfere with Braes's business in order to give Plaintiff another undeserved roll of the dice to get a different ruling on the same set of factual and legal allegations. Plaintiff should not be permitted to escape Judge Nachmanoff's reasoned and well-founded ruling in the prior case for a second bite at the apple. Plaintiff could have allowed its objections to Judge Nachmanoff's ruling or its motion for leave to amend its complaint play out, but it decided instead to initiate a new action refiling the same discredited claim against Braes. Having been put on notice that this claim lacked merit, Plaintiff nevertheless decided to refile it. There is no explanation for the refiling of the claim other than a desire to harass Braes. Indeed, this appears to have been a motivating factor the first time around, when Plaintiff's then-attorney accompanied the filing with an email to Braes advising Braes that it had a responsibility to disclose the lawsuit to its prospective investors. Exhibit 2. The subtext was unambiguous: Plaintiff was bringing Braes into this dispute because Plaintiff wanted to interfere with Braes's equity raise during the early days of the Siege acquisition.

Plaintiff's actions were vexatious, and an award of both attorney's fees and costs incurred and paid in the prior action is warranted. A declaration by Braes's principal, Sam Manohar, setting forth those fees and costs incurred in the prior action is appended hereto as Exhibit 6. The action should also be stayed until such time as those fees and costs are paid to Braes.

## CONCLUSION

For the reasons stated herein, Braes respectfully requests that this Court grant this Motion, award Braes its attorney's fees and costs paid in the prior action, and stay the present case until Plaintiff pays Braes its attorney's fees and costs.

Dated: May 1, 2020

/s/ Jason C. Hicks
Jason C. Hicks (VSB No. 46961)
Ian R. Dickinson (VSB No. 92736)
Womble Bond Dickinson (US) LLP
201 E. Main Street, Suite P
Charlottesville, VA 22902
Telephone: (202) 857-4536
Email: Jason.Hicks@wbd-us.com
　　　　Ian.Dickinson@wbd-us.com

Lela M. Ames (VSB No. 75932)
Womble Bond Dickinson (US) LLP
1200 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
Telephone: (202) 857-4427
Email: Lela.Ames@wbd-us.com

*Attorneys for Braes Capital, LLC*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on May 1, 2020, I caused the foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

David Gordon Fiske
Fiske Law Group PLLC
100 N Pitt St
Suite 206
Alexandria, VA 22314
(703) 518-9910
(703) 518-9931 (fax)
dfiske@fiskelawgroup.com
Attorney for Plaintiff Chertoff Capital, L.L.C.

Philip John Harvey
Harvey & Binnall PLLC
717 King Street
Suite 300
Alexandria, VA 22314
703-888-1943
703-888-1930 (fax)
pharvey@harveybinnall.com
Attorney for Defendants Rampart Holdings, LLC and Jason Syversen

                                                           /s/ Jason C. Hicks
                                                           Jason C. Hicks